### UNITED STATES v. MINKER.
### No. 9033.

District Court, M. D. Pennsylvania.
Nov. 26, 1935.

T. W. Lanigan, Sp. Asst. to the Atty. Gen., B. M. Ilderton, Sp. Atty., Department of Justice, of Washington, D. C., and Fred V. Follmer, U. S. Atty., of Scranton, Pa., for the United States.

Henry B. Friedman, of Allentown, Pa., and Abram Salsburg, of Wilkes-Barre, Pa., for defendant.

WELSH, Specially Presiding District Judge.

This is a case in which the trial court feels that it would be well for a short opinion to be written so that the facts and circumstances may be clearly set forth. It is likely that the stenographic record will not be completely transcribed and a correct picture of important features of the case will not be revealed.

The indictment upon which this defendant was tried was called for trial on October 28, 1935, in the city of Scranton, in the Middle District of Pennsylvania. In the indictment there were 63 defendants. Some had died and some were fugitives, leaving 54 to be arraigned. Upon the first day of the arraignment in the afternoon, all the defendants, 54 in number, were called before the bar and arraigned separately. Of this number, 10 pleaded guilty, 8 pleaded nolo contendere, and 36 pleaded not guilty.

It may be well to state at this point that there were approximately 17 different attorneys representing various defendants. There was no senior counsel or counsel who had the authority to take charge of the proceedings of the case as a whole. Each attorney acted in his individual capacity. This led to a sort of chaotic condition in the ranks of defendants' counsel.

As is often the case in matters of this kind before the court, numerous conferences of attorneys were asked for and granted. After some such conferences it was reported to the court unofficially that all the defendants who had entered pleas of not guilty would ask the court for leave to withdraw their pleas of not guilty and plead guilty. In fairness to defendant Minker and his counsel, however, he himself at no time made such a statement to the court; nor did any of the other defendants or their counsel make that definite statement. The respective counsel wished a little more time to confer and decide.

The next day, October 29, 1935, 5 more defendants came before the bar with their attorneys and requested leave to withdraw their pleas of not guilty and plead guilty, and one asked to change his plea from not guilty to nolo contendere, which requests were granted by the court. Further conferences were asked for and had.

The next day, October 30, 1935, 8 more changed their pleas from not guilty to guilty, and 2 from not guilty to nolo contendere.

The next day, October 31, 1935, 19 more changed their pleas from not guilty to guilty or nolo contendere. This left only one defendant, Minker, to stand trial before the jury.

In order that surrounding facts and circumstances of the case may be properly understood, it may be well to set forth as ac-

curately as possible these surrounding facts and circumstances. On the day set for trial the large courtroom was filled to overflowing capacity with jurors, defendants, witnesses, and counsel, causing the courtroom attendants to be on the alert to preserve proper court conditions. This was done admirably. The defendants were allotted to a certain section of the courtroom and certain seats designated to them to occupy each day of the trial. The entire panel from which selection of the jury was to be made was also kept separate. Government witnesses from various parts of the country were in attendance. These were also assigned separate sections. It was the desire of the Presiding Judge, notwithstanding the participation of such large numbers in various capacities at the trial, to preserve the order and dignity of the courtroom and to give to each defendant and counsel his individual representation and recognition in the proceedings as the circumstances of the case would permit. The court can say without fear of contradiction that such purpose was accomplished.

Not until the very last defendant who had pleaded guilty or nolo contendere had been heard by the court and his case disposed of was it known by the court that defendant Minker would actually go to trial before the jury. All indications were that he would do as the others had done. However, he finally elected to stand trial, and in view of all that had happened the court called the representatives of the government and counsel for defendant to a side bar conference in an endeavor to see if certain witnesses could be eliminated without impairment of defendant's rights or the rights of the government. Both parties seemed desirous of doing this, but no definite elimination of witnesses was agreed upon and both sides were permitted to place on the witness stand any witnesses they deemed necessary. The case then proceeded to trial against the defendant Minker. Sufficient numbers of witnesses were called by the government to prove the general alleged conspiracy, and then testimony relating specifically to defendant Minker was introduced. This testimony consisted of various witnesses and documentary proofs. At the conclusion of the government's case, the defendant offered no testimony and did not take the stand. The trial judge charged, and during his charge affirmed, all of the 19 points submitted to him by counsel for defendant with the exception of the one asking for a directed verdict of not guilty.

The case was submitted fairly to the jury, who retired in the afternoon, and later on in the evening brought in a verdict of guilty.

The defendant moved for arrest of judgment and a new trial, which was argued a few days after the verdict.

■ The defendant complains in his motion and reasons for a new trial that the court should have granted his motion for a bill of particulars. The fact is that the motion for a bill of particulars shows on its face that it was not sworn to until four days before the trial and not offered and filed until the very afternoon of the trial itself. The trial judge thought that it would be wrong to grant the motion for a bill of particulars in view of the existing circumstances, and refused the motion. The strenuous arguments put forth by counsel at the argument have not convinced the trial judge that he should have done otherwise.

■ In his reasons for a new trial, counsel objects to what he calls inflammatory statements of counsel for the government. Counsel for the government did not outline his case to the jury. However, he did make an address in the presence of the jury. The address was made at the request of the court, who, believing that all the defendants intended to plead guilty, asked the government's counsel to outline to the court the scope and ramifications of the conspiracy as charged in the indictment. Counsel for defendant Minker duly objected to certain things that the government's counsel had said, and the court explained fully to the jury that the case was to be tried and decided from the evidence from the witness stand and not from statements by counsel. The court, however, refused to withdraw a juror for the alleged improper remarks.

Counsel for defendant complains that the taking of the guilty pleas in the courtroom and the disposition of them in the presence of the jury operated unfairly against his client. It should be stated here that upon the reception of these various pleas of guilty or nolo contendere, the trial judge did not take sworn testimony from any one. In order to dispose of each individual case, a short statement as to the relative importance of the defendant in the scheme was obtained from a government witness and then the defendant was given complete latitude to show the court why leniency should be extended. Nearly the whole of the proceedings incident to the sentencing and disposition of the various defendants was tak-

en up by character witnesses, consisting of men and women in all ranks of life, family connections, employers, etc., so that nothing was done in the courtroom to create an unfavorable or antagonistic atmosphere which would ·injure the rights of any defendant in the case. In fact, it was otherwise.

The trial judge does not feel that a case of this kind should be dismissed without some comment as to the circumstances attending the trial of indictments of this kind. He has had occasion to preside at the trial of a great number of conspiracy cases in recent years. He cannot but be impressed with the changes that have taken place in modern crime and methods of criminals. The day of the individual one-man criminal is giving way to combinations of men to commit crime. Just as business men have changed their methods due to improved communication and transportation, the criminal world has also done so. Can the government meet these changed methods and yet preserve all the old established methods of dealing with crime? The very circumstances surrounding certain cases make it necessary for the government to indict for conspiracy. Actions against individuals will not suffice. Once conspiracy is alleged, it must be set forth and proven with particularity. Every link in the chain must be forged. Should there be one break, it would be fatal. Hence the government has found it necessary to indict large numbers of persons operating in widely separated areas. The trial judge is not insensible to the criticism that is leveled at this practice. He was quite sensible of the basis of it at this trial, and stated that he would preserve to each and every defendant his individuality in the case throughout the trial. That was done.

If the defendant in this case feels that certain things arising from the very nature of the case itself impaired the rights of the defendant, the trial judge must frankly say that he cannot agree with him. It must be remembered that the circumstances of the case were not made by the government; the circumstances of the case were created by the very elements of the case itself, and the government has done nothing more than meet those circumstances in accordance with the means in its power; namely, by an indictment for a conspiracy.

The trial judge, therefore, feels that he owes it to the appellate court, should an appeal be taken, to set forth these facts so that upon a review of the case a competent tribunal shall pass upon the entire question involved.

In view of the facts and circumstances of the ·case, and after hearing argument and upon due consideration of briefs submitted by counsel, the motion in arrest of judgment and the motion for a new trial are overruled and dismissed.